**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TRACY COHEN,<br><br>        Plaintiff,<br><br>vs.<br><br>KERING AMERICAS, INC. AND GUCCI AMERICA, INC.<br><br>        Defendants. | Case No. 1:24-cv-07046<br><br>Judge Jeremy Daniel |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**

    Defendants Kering Americas, Inc. ("Kering") and Gucci America, Inc. ("Gucci"), by their undersigned counsel, respectfully submit this Memorandum of Law in Support of their Motion to Dismiss Plaintiff's First Amended Class Action Complaint (hereinafter the "FAC").

**I.    INTRODUCTION**

    The FAC, filed by a former, disgruntled Gucci sales associate contains deficiencies that cannot be cured and which require dismissal of this lawsuit. Plaintiff's FAC, which purports to assert claims under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 (FAC, Count I) (the "ICFA") and for unjust enrichment (FAC, Count II), should be dismissed for multiple independent reasons. First, Kering is not subject to personal jurisdiction in this State and therefore must be dismissed pursuant to Fed. R. Civ. P. 12(b)(2). Second, the policies upon which Plaintiff predicates her claims are non-actionable, aspirational statements rather than statements of fact. Third, Plaintiff has not properly pled with particularity any alleged violations of the ICFA. Fourth, because Plaintiff's Complaint does not plead that she paid more for the Gucci products she purchased than their worth, the FAC does not plead actual damages—an essential element of an ICFA claim recognized in decisions of the Seventh Circuit and this Court. Finally,

1

unjust enrichment is not an independent cause of action, and fails for the same reasons as Plaintiff's ICFA claim. In addition, Plaintiff's class allegations should be stricken pursuant to Fed. R. Civ. P. 23 because common questions do not predominate across the putative class and because Plaintiff is not an adequate or typical class representative.

The FAC in this action alleges that the Plaintiff purchased "python-skin bags and shoes for her own personal use" (FAC ¶ 18) and sold exotic skin products to customers during her career at Gucci. (*Id.* at ¶ 11) Plaintiff also alleges, based upon a news report regarding publications by the organization known as People for the Ethical Treatment of Animals ("PETA"), that "two python farms allegedly supplying Kering-owned Caravel engaged in abusive python killing practices in Thailand," and that another facility in Thailand engaged in the skinning of crocodiles. (*Id.* at ¶¶ 19, 23) Plaintiff claims that statements reflecting the policies and values of Kering and Gucci created "false impressions . . . that . . . [python skins] . . . were humanely sourced and obtained through a natural shedding process" (*Id.* at ¶ 40), and that she would not have personally purchased Gucci exotic skin products, or sold such products, had she known of the supposed practices alleged in the PETA report. (*Id.* at ¶¶ 25-26) These allegations are insufficient to sustain either of Plaintiff's claims. Among other deficiencies further detailed below, Plaintiff does not claim that Gucci exotic skin products were deceptively labeled, that Defendants engaged in false advertising with respect to those products, or that the value of the products she purchased for her own personal use was less than the price she paid.

## II.     LEGAL STANDARDS

### A.     Rule 12(b)(2)

To survive a motion to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, a plaintiff must plead sufficient facts to establish a *prima facie* case of jurisdiction over

a defendant. *Morgan, Lewis & Bockius v. City of E. Chicago*, 401 Ill. App. 3d 947, 951-52 (1st Dist. 2010); *see also Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). To satisfy this burden, a plaintiff must show: (1) the claims asserted against the defendant fall within the scope of Illinois' long-arm statute (735 ILCS 5/2-209); and (2) the exercise of jurisdiction over the nonresident defendant would not offend the due process protections afforded by both the Illinois and United States Constitutions. *See Lexington Ins. Co. v. Hotai Ins. Co., Ltd.*, 938 F.3d 874, 878 (7th Cir. 2019) (citing *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012)).[1]

Personal jurisdiction exists in two forms: general and specific. *Daimler AG v. Bauman*, 571 U.S. 117, 126–28 (2014). General jurisdiction focuses on the forum where a defendant is said to be "at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (a "court may assert general jurisdiction over foreign corporations to hear any and all claims against them when their affiliations with the State are . . . 'continuous and systematic'"). Specific jurisdiction, by contrast, focuses on the defendant's *suit-related* conduct. *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cty.*, 582 U.S. 255 (2017). The determination of personal jurisdiction "is 'case-specific' and exists where the plaintiff's claim is 'linked to the activities or contacts' of the defendant with Illinois." *Comitz v. Rife*, 597 F. Supp. 3d 1235, 1240 (N.D. Ill. 2022) (quoting *Kipp v. Ski Ent. Corp. of Wis. Inc.*, 783 F.3d 695, 697-698 (7th Cir. 2015)).

B.  Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). Although a

---

[1] The Illinois long-arm statute permits Illinois courts to exercise personal jurisdiction to the extent authorized by the United States Constitution. As such, the two inquiries merge and need not be addressed separately. *uBid, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 425 (7th Cir. 2010).

complaint need not contain "detailed factual allegations," *Twombly*, 550 U.S. at 555, it must provide more than conclusory statements and "a formulaic recitation of a cause of action's elements." *Id*. When, as here, a plaintiff alleges fraud under the ICFA, the heightened pleading standard of Fed. R. Civ. P. 9(b) applies. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736-737 (7th Cir. 2014). Rule 9(b) requires that a pleading "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

### III. ARGUMENT

#### A. Kering is Not Subject to Jurisdiction in Illinois

Even accepting as true all well-pleaded factual allegations in the FAC (*Felland*, 682 F.3d at 672), all of which Defendants vehemently deny, Plaintiff has not met her burden to establish personal jurisdiction over Kering, which the FAC acknowledges is a foreign corporation.[2] *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 392 (7th Cir. 2020) (plaintiff bears the burden of establishing jurisdiction).

Plaintiff invokes Illinois' specific jurisdiction statute, 735 ILCS 5/2-209(a)(1). (FAC ¶ 5) To establish specific jurisdiction, (1) "the defendant's contacts with the forum state must show that it 'availed [itself] of the privilege of conducting business in the forum state or purposefully directed [its] activities at the state'"; (2) "the plaintiff's alleged injury must have arisen out of the defendant's forum-related activities"; and (3) "any exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice." *Lexington Ins. Co.*, 938 F.3d at 878; *see also Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

---

[2] The FAC correctly asserts that Kering is a foreign corporation headquartered in New York (FAC ¶ 3; *see also* ECF 1, p. 48. (Kering is incorporated in the State of Delaware and maintains its principal place of business in New York)). Thus, Kering is not subject to general jurisdiction . *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 919.

Here, Plaintiff makes only the conclusory allegation that "Defendants . . . transacted business within the State of Illinois" (FAC ¶ 5), a bald assertion insufficient to subject Kering to specific jurisdiction in a case where the Complaint is devoid of any allegations evidencing any actual Kering contacts with this State. *See American Health Info. Mgm't Assoc. v. Archetype Innovations, LLC*, 23 C 3363, 2024 WL 2801651, *3 (N.D. Ill. May 31, 2024) (conclusory allegations that defendant conducts business in this District are insufficient to make out a *prima facie* case of personal jurisdiction). The Complaint does allege that Plaintiff "worked as a sales associate for Defendants at its Gucci Chicago retail store from August 2006 until October 2023" (FAC ¶ 7), but Plaintiff cannot bootstrap jurisdiction over Kering through its affiliation with Plaintiff's employer, Gucci. [3] The Seventh Circuit has made clear that personal jurisdiction "cannot be premised on corporate affiliation or stock ownership alone where corporate formalities are substantially observed and the parent does not exercise an unusually high degree of control over the subsidiary." *Central States, Southeast & Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000); *AFI Holdings of Illinois, Inc. v. Nat'l Broad. Co.*, 239 F. Supp. 3d 1097, 1102 (N.D. Ill. 2017) ("[e]ach defendant's contacts with the forum State must be assessed individually"). While Gucci is a subsidiary of Kering, there are no allegations in the FAC suggesting that corporate formalities are disregarded, and thus no basis for ignoring the separate corporate existence of the two entities. Consequently, Kering should be dismissed from this litigation pursuant to Fed. R. Civ. P. 12(b)(2).

---

[3] In this regard, although the Complaint alleges that "Gucci America, Inc. . . . does business in Chicago, as well as throughout the State of Illinois" (FAC ¶ 4), it contains no comparable allegations as to Kering Americas, Inc.

5

B.  **Plaintiff's Claims Regarding Allegedly Deceptive Statements Fail to State a Cause of Action**

To state a claim under the ICFA, a plaintiff must plausibly allege "that the defendant committed a deceptive or unfair act with the intent that others rely on the deception, that the act occurred in the course of trade or commerce, and that it caused actual damages." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019). Here, Plaintiff challenges two types of supposedly false statements regarding exotic skin products sold in Gucci stores: (1) statements found on websites or in the media regarding Defendants' efforts to employ sustainable practices, as well as certain corporate policies; and (2) statements that she herself claims to have made to consumers following her supposed "train[ing]" regarding how python and crocodile-skin products were sourced. (FAC ¶ 10) Neither category of statements can survive a motion to dismiss, for the reasons set forth below.

1.  The FAC Fails to Plausibly Allege that a Reasonable Consumer would Rely on Defendants' Policies or that they Contain False Statements of Fact

The ICFA applies a reasonable consumer standard to marketing claims. *See Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972 (7th Cir. 2020); *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 475 (7th Cir. 2020). This standard requires a "practical and fact-intensive approach to consumer behavior" (*id.* at 477–78), which looks at the "probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 937 (7th Cir. 2021) (quotation omitted). Courts in this District have held that a reasonable consumer cannot be expected to rely upon press statements or companies' websites and have, as a result, dismissed ICFA claims based upon such statements. *See, e.g.*, *Sanchez v. Walmart, Inc.*, 23 CV 1297, 2024 WL 2132426, *7 (N.D. Ill. May 13, 2024) ("Statements made by Walmart's executives . . . webpages, and the like . . . fall outside the scope of actionable conduct"). The most important

6

consideration is "how real consumers understand and react to the [statement]." *Bell*, 982 F.3d at 476. Here, the FAC is devoid of any allegations that support the idea that the reasonable consumer would rely upon the written statements referenced in the FAC—or that Plaintiff herself relied upon them at the time of her purchases. *See De Bouse v. Bayer*, 235 Ill.2d 544, 555 (Ill. 2009) (an action under the ICFA requires a plaintiff to "receive, directly or indirectly, [the] communication or advertising from the defendant"). Plaintiff's ICFA claim, to the extent that it is premised upon corporate policies, should be dismissed for this reason.

Moreover, a statement cannot mislead a consumer unless it actually conveys untrue information about a product. *Stemm v. Tootsie Roll Industries, Inc.*, 374 F. Supp. 3d 734 (N.D. Ill. 2019). Statements that relate to the general values and priorities of a company, its reputation, integrity, and compliance with ethical norms, are non-actionable subjective statements, not objective statements of fact that can form the basis of misrepresentation claims. *See Sloan v. Anker Innovations Ltd*, 22 C 7174, 2024 WL 935426, *8 (N.D. Ill. Jan. 9, 2024) (statements related to general values and priorities of a company are subjective, not objective facts that one can prove true or false); *Chandler v. Ulta Beauty, Inc.*, 18-cv-1577, 2022 WL 952441, *9 (N.D. Ill. March 30, 2022) (general promises to act ethically, and deal with customers fairly, honestly and with integrity, are the types of promises and commitments that courts have held to be immaterial as a matter of law). Furthermore, the use of aspirational language such as "committed to," "promotes," "expectations," "aims," "high standards," and "should benefit," (*see* FAC ¶¶ 12-16) acknowledge ongoing efforts, notwithstanding a manufacturer's inherently limited control over the conduct of suppliers.[4] *See Sanchez*, 2024 WL 2132426, at *9 & n.10 (plaintiff's allegations challenging

---

[4] *Barber v. Nestle USA, Inc.*, 154 F. Supp. 3d 954 (C.D. Cal. 2015), *aff'd*, 730 F. App'x 464 (9th Cir. 2018) is particularly instructive. In that case, the plaintiff claimed that Nestlé made several statements online which would persuade a reasonable consumer that forced labor was not employed in Nestlé's supply chains. The statements in that case related to supporting human rights, requiring suppliers to adhere to a code of conduct, expecting suppliers to

7

Walmart's sustainability representations as they related to their suppliers were insufficiently pleaded to sustain a claim); *see also Myers v. Starbucks Corp.*, EDCV 20-00335-CJC, 2020 WL 13302437, *4 (C.D. Cal. July 29, 2020) (Quaker's assertion that it supports sustainably sourced cocoa through supplier was not misleading because it did not promise a perfect solution, but rather used aspirational language acknowledging its limited control over the supply chain).

In this case, the statements contained in the corporate policies cited in the FAC serve to inform consumers of the company's goals, values, and commitments rather than provide objective statements of fact. With respect to statements attributed to Gucci, the Sustainability Principles set forth expectations and requirements of suppliers, and also indicate that a failure to comply with these principles, or a failure to cooperate in determining and adopting corrective actions, may result in the termination of the business relationship. (FAC ¶ 13, n.2; Sustainability Principles at p. 14 (cautioning suppliers that "failure to comply with these principles . . . may result in the termination of the business relationship"))

With regard to policies published by Kering, the Code of Ethics quoted by Plaintiff reflects Kering's expectations of its business partners and serves as a "reminder of" the whistleblowing systems in place when there is a suspected violation or breach of the Code.[5] (FAC ¶ 12; Code of Ethics at pp. 21-24) Kering's Human Rights Policy makes clear that "Kering seeks to source its

---

adhere to all applicable laws, and prohibiting suppliers from using forced labor. *Id*. at 963. The court held that there was little question that Nestlé's online documents set forth firm requirements for suppliers, but no reasonable consumer reading the documents in context could conclude that suppliers complied with defendant's requirements in all circumstances. *Id*. On the contrary, the court observed, while Nestlé "is not shy about identifying for consumers the rules and expectations for its suppliers . . . it does not mislead them into thinking that its suppliers abide by those rules and meet those expectations in every instance." *Id.* at 964.

[5] While the FAC does not quote the whistleblower portion of the Code of Ethics, the Court may consider the full text of the documents cited in the FAC. When a complaint explicitly references statements, particularly when they are central to the claims, the Court may consider the statements in their entirety. *See, e.g., Swiatek v. CVS Pharm.*, 23-CV-01523, 2024 WL 1328801, *2 (N.D. Ill. Mar. 28, 2024) (citing *Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009)). Further, when applying the reasonable consumer standard, a Cout is to consider all information available to the consumer. *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019).

materials responsibly . . . [with] . . . high standards of animal welfare" and that "Kering implements and verifies the highest standards of animal welfare across its supply chains and *works* to reduce issues around traceability." (s*ee* FAC ¶ 14, n.3; Human Rights Policy at p. 27 (emphasis added)) Plaintiff's selected quotations from Kering's Animal Welfare Standards ignore relevant portions of the cited policy. Immediately following the language quoted by Plaintiff in Paragraph 15(b) of her FAC, the policy states that "[w]e are on a *strategic and operational step-by-step journey to achieve this*. At the same time, we are *working* to address any remaining issues around traceability . . . ." (s*ee* FAC ¶ 15, n.4; Animal Welfare Standards at 4 (emphasis added)) Thus, these policies set forth strong aspirational standards implemented to support animal welfare and treatment, but the policies themselves make clear that efforts to change the industry are ongoing.[6]

No reasonable consumer reading the quoted Kering or Gucci policies in context would conclude that Defendants are representing that all suppliers comply under all circumstances and in every instance. *See Ruiz v. Darigold, Inc.*/Northwest Dairy Ass'n, C14-1283RSL, 2014 WL 5599989, *4 (W.D. Wash. Nov. 3, 2014) (dismissing claim because "[e]ven if the Court considers the [language] on which plaintiffs' claims of misrepresentation and omission rely, when read in context they reflect nuanced assessments of the current situation, are aspirational statements, or have not been shown to be false in any material respect"); *Barber*, 154 F. Supp. 3d at 964 (Nestlé did not mislead customers "into thinking that its suppliers abide by those rules and meet those expectations in every instance").

---

[6] The alleged presence of Kering policies appearing on the Gucci and Kering websites does not confer either general or specific jurisdiction over Kering. *See Collazo v. Enter. Holdings, Inc.* 823 F. Supp. 2d 865, 871 (S.D. Ind. 2011) ("even if the[] entities do share a common website for marketing purposes, along with shared contact information and customer support, that alone is not sufficient to impute the contacts of a subsidiary . . . to a parent"); *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796 803 (7th Cir. 2014) (a website "should not open a defendant up to personal jurisdiction in every spot on the planet where that interactive website is accessible. To hold otherwise would offend 'traditional notions of fair play and substantial justice'") (internal quotations and citations omitted).

      2.      <u>The FAC Fails to Meet the Pleading Standard Required by Rule 9(b)</u>

            i.      *Plaintiff Does Not Sufficiently Identify the Statements Allegedly Made to Her or the Date of her Purchases*

Rule 9(b) requires that when bringing a claim sounding in fraud, a plaintiff must allege "the 'identity of the persons making the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated.'" *DeLeon v. Beneficial Const. Co.*, 55 F. Supp. 2d 819, 825 (N.D. Ill. 1999) (quoting *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992)). With regard to the statements allegedly made to Plaintiff as part of her supposed training as a sales associate at Gucci, Plaintiff fails to provide the most basic facts, including who purportedly "instructed" her, when the "instruction" took place, and what materials were provided to her for training purposes. *See id.*; *see also Baldwin v. Star Sci., Inc.*, 78 F. Supp. 3d 724, 737 (N.D. Ill. 2015) (a plaintiff must state "'the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff'") (internal quotations and citation omitted).

And as to Gucci and Kering's corporate policies, Plaintiff was required to "identify a specific misrepresentation that [s]he saw, the date [s]he saw it, and where [s]he saw it." *Baldwin*, 78 F. Supp. 3d at 738 (citing *In re Sears, Roebuck & Co. Tools Mktg. & Sales Pracs. Litig.*, MDL–1703, 2009 WL 937256, *6 (N.D. Ill. Apr. 6, 2009) (dismissing complaint where "plaintiffs fail to allege that they saw any particular misrepresentation or the specific content of the misrepresentation," and where "plaintiffs also fail to adequately allege when they saw any misrepresentation.")). The FAC contains no such allegations.

A related but distinct failing of the FAC is that it does not specify when Plaintiff made her purchases of exotic skin products.[7] Plaintiff alleges that she purchased "multiple exotic skin products for many years, beginning in January 2009, approximately." (FAC ¶ 27) But she does not specify the dates of her purchases—critical facts given that Plaintiff identifies, and quotes extensively from, corporate statements dated 2019 to 2021—statements upon which she purports to base her claims but which are dated long after 2009. (FAC ¶¶ 12, 14, 15, 16)

From the face of the FAC, one cannot determine whether Plaintiff encountered any supposedly deceptive statement at the time of her purchase(s). Without the "who, what, when, where, and how," the FAC lacks the requisite "precision" and "measure of substantiation" that Rule 9(b) requires as to claims of fraud. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011) (collecting authority). As a result, Plaintiff has not plausibly alleged her claims, and the FAC should be dismissed for this additional reason.

      ii.    *Plaintiff's Claims Are Premised Upon Information and Belief from Third Party Sources that Do Not Sufficiently Tie the Alleged Conduct to Defendants*

Generally, a plaintiff cannot satisfy the particularity requirement of Rule 9(b) with a complaint that is filed on information and belief. *Pirelli*, 631 F.3d at 442-43. While that phrase is not explicitly used in the FAC, it is evident that Plaintiff's claim relies on the unverified claims of a third-party–here PETA–to support her supposed allegations of fraud. *See id.* at 443-444 (holding that a plaintiff bears the burden of pleading plausible grounds for suspecting that the defendant engaged in fraud). Here, Plaintiff's claims of deception are premised entirely upon a so-called investigation performed by PETA, rather than Plaintiff's own personal knowledge or information,

---

[7] Without knowing when Plaintiff made her purported purchases, it is not possible to determine when her cause of action accrued or whether she has complied with the 3-year statute of limitations applicable to ICFA claims. 815 ILCS 505/10a(e).

11

and certainly are not based on any facts drawn from the testing or analysis of any products she purchased. (FAC ¶¶ 19-21 & nn.8, 9) Neither the PETA report nor the FAC alleges that any purportedly mistreated reptiles were the source of products sold in Illinois. (*Id.*) The ICFA claim should be dismissed for this additional reason.

### 3. Plaintiff Fails to Plead Actual Damages

With respect to damages, Plaintiff alleges only that she would not have purchased Gucci "exotic skin" products "had she known then what she knows now." (FAC ¶ 26)[8] As a matter of law, this is insufficient to state a claim under the ICFA. *Benson*, 944 F.3d at 646 (a plaintiff must establish "actual damages" to state an ICFA claim). To plead actual damages, a plaintiff must allege "actual pecuniary loss." *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010). "Even under [the lesser] Rule 8(a) [standard], 'naked assertions devoid of further factual enhancement' are insufficient to support a claim." *Camasta*, 761 F.3d at 739-40 (quoting *Iqbal*, 556 U.S. at 678) (affirming the dismissal of a complaint where the plaintiff "failed to provide any evidence that he paid more than the actual value of the merchandise").

The Seventh Circuit has recently reconfirmed that the assertion that a consumer would not have purchased a product had he or she known additional facts, without more, is insufficient to satisfy the ICFA's actual damages requirement. In *Benson*, plaintiffs challenged Fanny May's "slack-fill" practices (the difference between the capacity of a container and the actual volume of product contained therein) used in its candy packaging, alleging that plaintiffs would not have purchased the candy if they had known that the container was not entirely full. 944 F.3d at 648. The Seventh Circuit found that such threadbare allegations of damages impermissibly "assume[d]

---

[8] Plaintiff also concludes that she would not have sold exotic skin products had she known about the purported mistreatment of animals. (FAC ¶ 25) However, she does not explain how her sale of products caused her to suffer actual damages when she was paid for selling the products.

12

that [plaintiffs] were injured." *Id.* In order to allege a plausible theory of actual damages, plaintiffs were required to allege something more, such as that the products were "defective" or "worth less than what they actually paid." *Id.* (collecting authority); *see also Stemm*, 374 F. Supp. 3d at 743 (dismissing ICFA claim where plaintiff failed to plead that the product she purchased was "worth less than . . . she paid for it").

As this Court has observed, a purported damage claim predicated upon the contention that the plaintiff would not have purchased a product but for an alleged misrepresentation "runs afoul of *Benson* and *Camasta*, which hold that a plaintiff's allegations that he ***'would not have purchased' a product but for the defective advertising are insufficient to establish damages.***" *Thomas v. Walmart, Inc.*, 23 CV 5315, 2024 WL 1050179, *9 (N.D. Ill. Mar. 11, 2024) (emphasis added). Here, Plaintiff offers no explanation or supporting facts for her conclusory damages claim, and does not plead that the purchase price she paid exceeded the value of the products.[9] Plaintiff's allegations are therefore insufficient to state a claim under the ICFA and the FAC must be dismissed.

### 4. The Unjust Enrichment Claim Should Be Dismissed For Failure To Properly Plead The ICFA Claim

Unjust enrichment under Illinois law "does not constitute an independent cause of action. Rather, it is a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud . . . ." *Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311, 324 (7th Cir. 2021). "[I]f an unjust enrichment claim rests upon 'the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust

---

[9] Though Plaintiff has not alleged *what* price she paid for the exotic skin products she purchased, her status as an employee (with access to employee discounts) will in all probability prevent her from alleging, consistent with the requirements of Fed. R. Civ. P. 11, that she paid more than the products are worth. *See Sabo v. Wellpet, LLC*, 250 F. Supp. 3d 332, 337 (N.D. Ill. 2017) (plaintiff's allegation that he "paid more for the products than they were actually worth," "without any factual foundation to moor his subjective estimation of the products' worth," was "too speculative to support an inference of actual damages").

enrichment will stand or fall with the related claim.'" *Swiatek,* 2024 WL 1328801 at *9 (quoting *Cleary v. Philip Morris, Inc.*, 656 F.3d 511, 517 (7th Cir. 2011)). Count II of the FAC fails for the same reasons as Count I, and accordingly, the unjust enrichment claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

        **C.**     **Plaintiff's Class Allegations Should be Stricken Pursuant to Rules 23(c)(1)(A) and 23(d)(1)(D)**

"When a plaintiff's class allegations are facially and inherently deficient a motion to strike class allegations can be an appropriate device to determine whether the case will proceed as a class action." *Garvey v. Am. Bankers Ins. Co. of Fla.*, 17-CV-986, 2019 WL 2076288, at *1 (N.D. Ill. May 10, 2019) (internal quotations and citation omitted); *see also* Fed. R. Civ. P. 23(d)(1)(D). Where it "is plain enough from the pleadings" that a plaintiff's class allegations cannot satisfy Fed. R. Civ. P. 23, they should be stricken. *See Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 160 (1982) ("[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim").

In this case, Plaintiff's putative class is uncertifiable as a matter of law because Plaintiff cannot meet the requirements of Rule 23.[10] Rule 23 employs a two-step analysis to determine whether class certification is appropriate. First, Plaintiff must satisfy all four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. The second step of the analysis requires that Plaintiff also satisfy Rule 23(b)(3), which requires Plaintiff to establish that questions of law or fact common to class members *predominate* over any questions affecting only individuals.

---

[10] Even when a defendant initiates the Court's review of class allegations, the burden remains on the plaintiff to establish that the suit may be sustained as a class action. *See Oshana v. Coca–Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006).

Here, Plaintiff cannot meet the burdens imposed by either Rule 23(a) or 23(b). The FAC asserts that Plaintiff brings her claims on behalf of "all individuals who purchased exotic skin products in Illinois" since January 2009. (FAC ¶ 29) Resolution of the issues in a case brought on behalf of such a class would require individual inquiry into each purported class member's circumstances, including: (1) whether the individual ever reviewed or relied upon any of the statements cited in the Complaint regarding sustainability or animal welfare or was exposed to Plaintiff's so-called "selling ceremony"; (2) whether representations regarding the treatment of reptiles was a material factor in the consumer's decision to make a purchase; and (3) whether the exotic skin purchased was harvested in the manner described in the PETA report.

For purposes of Rule 23(a)(2), commonality, "[w]hat matters to class certification . . . is . . . the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, Plaintiff will not be able to establish the commonality or predominance elements required by Rule 23(a)(2) or (b)(3). Moreover, Plaintiff's position as a sales representative also underscores the atypicality of her supposed claim, a failure to satisfy the requirements of Rule 23(a)(3), and which also warrants the striking of her class allegations. *See Oshana*, 472 F.3d at 514 (the typicality requirement "is meant to ensure that the named representative's claims have the same essential characteristics as the claims of the class at large") (internal quotations and citation omitted).

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that Kering be dismissed pursuant to Rule 12(b)(2) for lack of personal jurisdiction. Defendants further request that the FAC be dismissed with prejudice pursuant to Rule 12(b)(6) for failure to state a claim or, in the alternative, that the class allegations be stricken from the FAC.

Dated: August 16, 2024

Respectfully submitted,

By: */s/ John W. Rotunno*
John W. Rotunno
Nicole C. Mueller
Kenn Brotman
Marvis A. Barnes
**K&L GATES LLP**
70 West Madison Street, Suite 3100
Chicago, IL 60602-4207
Tel: (312) 372-1121
Fax: (312) 827-8000
john.rotunno@klgates.com
nicole.mueller@klgates.com
kenn.brotman@klgates.com
marvis.barnes@klgates.com

*Attorneys for Defendants Kering Americas, Inc. and Gucci America, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of Court via the Court's CM/ECF system on August 16, 2024, which will serve all counsel of record.

I FURTHER CERTIFY that on August 16, 2024, I caused a true and correct copy of the foregoing to be served on the following counsel via the United States Postal Service first class mail, postage prepaid and via e-mail to the following:

>Tamara N. Holder
>The Law Firm of Tamara N. Holder LLC
>917 West Washington Blvd., Suite 222
>Chicago, Illinois 60607
>Tel.: 312-440-9000
>tamara@tamaraholder.com
>
>Johanna J. Raimond
>Law Offices of Johanna J. Raimond Ltd.
>431 South Dearborn, Suite 1002
>Chicago, Illinois 60605
>Tel.: 312-235-6959
>jraimond@raimondlaw.com

>/s/ John W. Rotunno