IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| TRACY COHEN, on behalf of herself and others similarly situated, ) ) ) ) Plaintiff, ) ) vs. ) ) KERING AMERICAS, INC., and ) GUCCI AMERICA, INC., ) ) Defendants. ) | Case No. 24-cv-7046<br><br>Judge Daniel |

**Plaintiff's Opposition to Defendants' Motion to Dismiss**

Plaintiff, by and through her attorneys, submit this memorandum in opposition to defendants Kering Americas, Inc. and Gucci America, Inc.'s motion to dismiss.

**I.      Relevant Facts**

Defendants marketed their exotic skin products to customers by having their sales staff conduct what they referred to as a "selling ceremony" in which they donned black gloves and told prospective purchasers that (1) the skins were sourced ethically; (2) the snakes and crocodiles were not tortured; (3) the snake skins were obtained through a natural shedding process; (4) the hides are a by-product of the meat industry; and (5) they only work with suppliers that have certified the humane treatment of animals. (Dkt. 1, Ex. A, First Amended Complaint ("FAC") at ¶10). Plaintiff herself, a former sales associate, was trained by defendants on how to perform this ceremony and what to say. (FAC at ¶10).

Plaintiff was also a customer. In approximately January 2009, plaintiff purchased her first Gucci exotic animal product. (FAC at ¶27). Plaintiff, as well as her customers, relied on defendants' representations about the ethical, non-violent means by which the company obtained the python, crocodile and alligator skins. (FAC at ¶¶11, 18).

Defendants' public statements and policies reinforced the companies' commitment to sustainable practices and animal welfare, including their claimed commitment to keeping animals free from pain, fear and distress. (FAC at ¶¶12-18).

On March 12, 2024, plaintiff learned that defendants were sourcing skins from a company that tortured and killed pythons. The pythons were smashed over the head with hammers, pierced with metal hooks and then, while still alive and writhing, bloated with water and skinned. (FAC at ¶¶19-22).

Plaintiff further learned that defendants were similarly acquiring crocodile skins through torture. The crocodiles were repeatedly stabbed with a metal blade and still alive when workers peeled off their skins from their moving bodies. (FAC at ¶23).

Plaintiff never would have purchased exotic skin products had she known that defendants were deceiving her about the origin of the skins, and in fact obtaining these skins through animal torture and abuse. (FAC at ¶26). Moreover, the products are worth less on the secondary market. She could not – without committing fraud herself – market or sell them as ethically-procured luxury items.

## II.     Standard of Review

On a motion to dismiss, a Court must construe "all well-pleaded facts (and all reasonable inferences from them) in the light most favorable to the nonmoving party." *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cnty.*, 804 F.3d 826, 832 (7th Cir. 2015).

## III.    Plaintiff has properly pled an ICFA violation

Plaintiff agrees with defendants' articulation (at 6) of the elements of an Illinois Consumer Fraud Act ("ICFA") claim. To state a claim plaintiff need only plausibly allege (1) a deceptive or unfair act; (2) made with the intent that she rely on the deception; (3) during the course of trade or

2

commerce; (4) that caused actual damage." *See Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019). As demonstrated below, plaintiff has met this standard.

> A. **Plaintiff properly pled that defendants made deceptive statements that a reasonable consumer would rely upon**

Defendants claim (at 6-9) that plaintiff failed to allege any deceptive or unfair statements that a reasonable consumer would rely upon. Defendants are wrong.

Plaintiff alleged that defendants represented to her and required she repeat to Gucci customers that (1) the skins were sourced ethically; (2) the snakes and crocodiles were not tortured; (3) the snake skins were obtained through a natural shedding process; (4) the hides are a by-product of the meat industry; and (5) defendants only work with suppliers that have certified humane treatment of animals. (FAC at ¶10). Plaintiff further alleged, contrary to defendants' claim (at 7), that she and her customers relied on these representations. (FAC at ¶¶ 11,18).

Drawing all inferences in plaintiff's favor, as required on a 12(b)(6) motion, a reasonable consumer could interpret these statements to mean that defendants were not clubbing pythons over the head and subjecting them to water torture, or skinning crocodiles alive to obtain their skins.

In any event, how a consumer would react "may not be answered as a matter of law" on a motion to dismiss. *Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 481 (7th Cir. 2020). In *Bell*, the Seventh Circuit reversed the district court on a Rule 12(b)(6) motion because the plaintiffs were "entitled to present evidence on how consumers actually" understood the advertising. *Id.* It is thus not surprising that cases relied upon by defendants (at 6) were either decided on summary judgment (*Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969 (7th Cir. 2020) and *Weaver v. Champion Petfoods USA Inc.*, 3 F.3d 927 (7th Cir. 2021)); reversed a dismissal on appeal for impermissibly deciding a fact issue (*Bell*); or found to have pled a deceptive practice (*Sanchez v. Walmart Inc.*, 2024 U.S. Dist. LEXIS 85896, at *33 (N.D. Ill. May 13, 2024) (holding the pleadings adequately stated "the 'Sustainably Sourced - 100% - Sustainability' label is actionable as a deceptive statement.").

3

Plaintiff has also pled that defendants' policies and public statements reinforce defendants' verbal representations about the humane treatment of animals. (FAC ¶¶12-16). Defendants argue (at 6) that "a reasonable consumer cannot be expected to rely upon press statements or companies' websites." They further argue (at 7) that these policies relate merely to defendants' "general values and priorities" and therefore are non-actionable subjective statements. These arguments assume that plaintiff is alleging these policies and public statements as the source of the deceptive statements. She is not. The in-store, verbal claims are the deceptive statements. The policies and statements are just additional facts that demonstrate that even reasonable consumers who might fact-check the in-store statements would find them consistent with the deliberate, in-store representations about defendants' humane treatment of animals.

For all these reasons, though it is ultimately a fact issue not properly decided on a Rule 12(b)(6) motion, plaintiff has adequately pled that a reasonable consumer would rely on defendants' representations.

**B.  Plaintiff pled her ICFA claim with particularity under Rule 9(b)**

Defendants argue (at 10-12) that plaintiff failed to assert her ICFA claim with particularity as required under Rule 9(b). Not true.

"To satisfy Rule 9(b) the complaint, "must show not just the mere possibility of a fraud, but that fraud is a 'necessary or probable inference from the facts alleged.'" *Thomas v. Walmart Inc.*, 2024 U.S. Dist. LEXIS 42111, at *19 (N.D. Ill. Mar. 11, 2024) (citing *Spector v. Mondelez Int'l, Inc.*, 178 F. Supp. 3d 657, 672 (N.D. Ill. 2016)). Plaintiff has met this standard.

First, she pled with specificity defendants' representations to her, which she in turn repeated to her customers, including that (1) the skins were sourced ethically; (2) the snakes and crocodiles were not tortured; (3) the snake skins were obtained through a natural shedding process; (4) the

4

hides are a by-product of the meat industry; and (5) they only work with suppliers that have certified humane treatment of animals. (FAC at ¶10).

Next, plaintiff pled sufficient allegations from which fraud is a "necessary or probable inference," including pictures of the pythons being bludgeoned with hammers and crocodiles being skinned alive. (FAC at ¶¶21, 23).

Defendants argue (at 11-12) these allegations should not be credited because they came from an investigative report performed by an outside organization. This is the same argument made and rejected in *Thomas*, where the plaintiffs relied on testing performed by a third party that was not even identified. The Court there held that "neither the identity of the tester nor the precise timing or location of the tests affects the plausibility of the plaintiffs' allegations; either the tests were performed on the products, or they were not. A complaint need not "have the factual richness required of a response to a motion for summary judgment." *Thomas*, 2024 U.S. Dist. LEXIS 42111, at \*21 (citing *Hunt v. Dart*, 2010 U.S. Dist. LEXIS 5249, at \*1 (N.D. Ill. Jan. 22, 2010) and *Talavera v. Metabolife Int'l Inc.*, U.S. Dist. LEXIS 19430, at \*3 (N.D. Ill. Sept. 24, 2004). The same analysis applies here.

Defendants also argue (at 10) that plaintiff failed to provide sufficient detail of the fraud, such as the name of the instructor who provided her with the selling ceremony training, the whereabouts of the training session and any materials she received. The law does not require such detailed pleadings. In *Benson*, which alleged consumer fraud for including too few chocolates relative to the size of the box, the Seventh Circuit held that the who, what, when, where and how of Rule 9(b) was satisfied by referencing "Illinois stores" and describing the size of the box, the number of chocolates in each box and explaining how a reasonable consumer might believe they would hold more chocolates than they actually do. *Benson*, 944 F.3d at 646.

Plaintiff has met this standard here. As noted above, plaintiff described defendants'

5

representations about the treatment of the animals and the reasons it is probable these were fraudulent. (FAC at ¶¶10, 21, 23). These provide the who, what and how of the fraud. Plaintiff also pled the where (the "Gucci Chicago retail store") and when (January 2009 or thereabouts). (FAC at ¶¶7, 27). Accordingly, plaintiff has discharged her obligation to plead her ICFA claim with particularity. However, to the extent the Court requires additional pleadings, plaintiff respectfully seeks leave to amend the complaint.

      C.      **Plaintiff properly pled actual damages**

Plaintiff pled that if she knew the skins were procured through animal torture and abuse, she "would not have purchased her own Gucci exotic skin products with her own hard-earned money." (FAC at ¶26). She further pled she is "traumatized" that defendants "duped her into buying multiple exotic skin products for many years." (FAC at ¶26).

Defendants argue (at 12-13) that under *Benson*, 944 F.3d at 639, *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 735 (7th Cir. 2014) and *Kim v. Carter's Inc.*, 598 F.3d 362 (7th Cir. 2010), she must also plead that the exotic skin products were defective, worth less than what she paid for them, or could have been obtained at a better price.

However, these cases are inapposite. Each involves a type of consumer fraud that the *Kim* Court described as "comparative price deception." *Kim*, 598 F.3d at 365. In each of these cases, the plaintiffs alleged the seller tricked them into buying consumer goods – chocolates in *Benson*, men's clothing in *Camasta* and children's clothing in *Kim* – that were not worth the price or could have been obtained cheaper elsewhere by misrepresenting their value. In such cases, the Seventh Circuit requires some showing that the items were overpriced.

Here, in contrast, plaintiff is not arguing that defendants engaged in price deception. She was not shopping for the best price on chocolates or shirts. The issue here is that defendants did not sell her the unique item it claimed to be selling: an ethically sourced exotic skin product. Had she known

6

that defendants were torturing the animals, she would not have purchased these items at all. Her economic loss is thus the full price she paid.

Moreover, plaintiff in effect *did* plead that defendants were selling a defective product: an ethically sourced exotic skin product that was not actually ethically sourced. Pleading that the product was defective satisfies the actual damages standard. *See Benson*, 944 F.3d at 648 (holding that alleging a defective product satisfies the actual damage standard under the ICFA).

Defendants are likely to argue plaintiff was required to explicitly use the term "defective" – but she was not. It is proper for this Court to make reasonable inferences on a motion to dismiss. Thus, in *Thomas v. Walmart Inc.*, 2024 U.S. Dist. LEXIS 42111 (N.D. Ill. Mar. 11, 2024), the issue was whether plaintiffs properly pled actual damages in a case involving the purchase of bed sheets whose thread count turned out to be materially overstated. *Id.* at *22-23. This Court held the plaintiffs satisfied the actual damages requirement because, read in the light most favorable to plaintiffs as required on a Rule 12 motion, the plaintiffs adequately alleged that they received a product "worth less than what they actually paid." *Id.* at *24.

Here too it is reasonable to infer that plaintiff received less than she bargained-for because she never received ethically sourced exotic skin products at all. It is also reasonable to infer that the truth, now exposed, has deflated the resale value of these products, because plaintiff and the putative class can no longer sell them in the secondary market as ethically sourced luxury goods.

For all these reasons, plaintiff has adequately pled actual damages.

**IV.    Plaintiff properly pled unjust enrichment**

Plaintiff agrees that there is no stand-alone cause of action for unjust enrichment and therefore its fate is tied to her ICFA claim. Because she has adequately pled an ICFA claim, her unjust enrichment claim too should be upheld.

V.    **Defendants Rule 23 arguments are premature**

Motions to strike class allegations at the pleadings stage are generally "'disfavored and fall under the purview of Rule 23 rather than Rule 12(f).'" *Hughes v. Circle K Stores, Inc.*, 2024 U.S. Dist. LEXIS 140745, at *10 (C.D. Ill. July 12, 2024) (*quoting Beyer v. Michels Corp.*, 2023 U.S. Dist. LEXIS 53601, at *37-38 (E.D. Wis. Mar. 29, 2023). Motions to strike are appropriate only in the rare case in which the class deficiency is plain on the face of the complaint, such as *Garvey v. Am. Bankers Ins. Co. of Fla.*, 2019 U.S. Dist. LEXIS 79753, *6 (N.D. Ill. May 10, 2019), on which defendants rely, where the lack of personal jurisdiction over out-of-state defendants justified striking the class allegations as to those defendants.

Here, in contrast, defendants seek (at 14-15) to strike the class allegations on the basis of substantive Rule 23 issues, including the viability of the class definition, commonality, predominance and typicality. Contrary to defendants' claim (at 14, n.10) that the plaintiff bears the burden of establishing a class, "'[w[]hen the plaintiff has had no opportunity for discovery, the defendant bears the burden of showing the class is not certifiable.'" *Hughes* 2024 U.S. Dist. LEXIS 140745, at *12 (internal citation omitted). Defendants' undeveloped, two paragraph argument (at 15) on these four Rule 23 issues fails to carry this burden. "Perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016).

Defendants' arguments are not only premature, but largely wrong as a matter of law. For example, defendants argue (at 15) that alleged "dissimilarities" are sufficient to defeat commonality. In fact, "[n]either Rule 23 nor any gloss that decided cases have added to it requires that *every* question be common." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014). In *Suchanek*, like this consumer fraud case, the Seventh Circuit reversed the district court's denial of class certification, ruling that it was sufficient that there was one common question: whether

8

defendants' representation "was likely to mislead a reasonable consumer." *Id.* at 755. It further held that *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), was distinguishable as lacking *any* common issue. *Id.* at 755-756

Here too there is a common question: whether the representations about the humane treatment of the animals in procuring their skins is likely to mislead a reasonable consumer. And thus, here too, *Wal-Mart* is distinguishable and irrelevant.

Defendants similarly conclude without analysis (at 15) that individual issues like reliance make it impossible for plaintiff to meet the predominance element of Rule 23(b). But the Seventh Circuit has rejected this argument also, ruling that "[e]very consumer fraud case involves individual elements of reliance or causation," and this does not preclude a finding of predominance with regard to common issues. *Id.* at 759.[1]

Moreover, while defendants question the viability of the class definition, "the appropriate remedy for these class definition issues is not to strike the class allegations from the complaint." *McClaine v. DX Enters.*, 2024 U.S. Dist. LEXIS 148038, at *20 (S.D. Ill. Aug. 19, 2024). It is, instead, to "refine the class definition as the parties engage in discovery at the class certification stage." *Id.* at *21.

Finally, defendants argue plaintiff fails to meet the typicality requirements because she was a Gucci sales representative. However, the only case they cite for this proposition is *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006), where there was no allegation of a similar conflict. Moreover, *Oshana* was decided only after class discovery and briefing, not on a Rule 12 motion to strike.

---

[1] Defendants' also claim the question of whether the animals were tortured and abused – presumably one of its planned defenses – is an individualized issue. But this too is a common question. It will not vary plaintiff by plaintiff.

9

In any event, plaintiff here is not seeking to represent the class based on her job. Rather, she is seeking to represent the class as a purchaser of exotic skin products. Her job as a sales representative for defendants is merely helpful to the case, as she will be able to assist class counsel with discovery based on her training and the requirement that she perform the "selling ceremony" in which she was required to repeat the representations made to her, that the exotic skins were ethically sourced.

After class discovery and briefing, this Court will have the information it needs to decide these issues on a full evidentiary record. Defendants' attempts to short-circuit this process through a conclusory motion to strike should be denied.

## VI. Plaintiff plausibly pled personal jurisdiction over defendant Kering

Defendants argue (at 4-5) that this Court lacks personal jurisdiction over Kering. "[A] complaint need not include facts alleging personal jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (citing *Steel Warehouse of Wisconsin, Inc. v. Leach,* 154 F.3d 712, 715 (7th Cir. 1998). However, once raised, it is plaintiff's burden to establish jurisdiction. Accordingly, plaintiff provides a declaration expanding upon her pleadings, which placed Kering on notice that jurisdiction lies because it "transacted business within the State of Illinois." (FAC at ¶5).

### A. Kering's business in Illinois conveys personal jurisdiction

"Specific personal jurisdiction is appropriate where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010) (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985)).

Kering is a New York company that "manages the development of a series of renowned Houses in Fashion, Leather Goods and Jewelry," including the House of Gucci. (FAC ¶3; https://www.kering.com/en/group/discover-kering/.

Kering has purposely directed its activities at Illinois and availed itself of the privilege of conducting business in Illinois in two ways. First, Kering sells its Kering-manufactured products through its Gucci stores, including the Chicago store. (Ex. A, Declaration of Tracy Cohen at ¶2). Causing "its product to be distributed in the forum state" is sufficient to demonstrate the purposeful transacting of business. *Curry v. Revolution Labs., LLC*, 949 F.3d 385, 398 (7th Cir. 2020); *see also Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 758 (7th Cir. 2010) (holding that selling cigarettes to Illinois citizens constitutes sufficient contact with the forum state). Second, Kering jointly employs Gucci employees, including those in Chicago, through which Gucci conducts business. (Ex. A at ¶3).

Moreover, the alleged injury in this case – the fraudulent sale of exotic skinned products – arises out of these business activities Kering conducts in Illinois. Accordingly, this Court holds personal jurisdiction over Kering.

### B.  Kering's control over Gucci also conveys personal jurisdiction

Even if Kering was not subject to personal jurisdiction on the basis of its own business activities in Illinois, it is likely this Court could exercise jurisdiction over Kering on the basis of the unusually high degree of control it holds over Gucci.

While stock ownership alone does not convey jurisdiction, a court may exercise jurisdiction over parent companies who exercise "an unusually high degree of control" over a subsidiary. *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000). "Where a plaintiff claims a parent company is subject to a court's jurisdiction by virtue of its subsidiary's contacts, the court considers the following facts: (1) whether officers or directors are the same; (2) how much control is exerted by parent over daily affairs of its subsidiary; (3) whether

11

parent arranges financing for and capitalization of subsidiary; (4) whether separate books, tax returns, and financial statements are kept; (5) whether parent holds its subsidiary out as agent; and (6) the method of payment made to parent by subsidiary." *Marks v. Worldwide Robotic Automated Parking, LLC*, 2017 U.S. Dist. LEXIS 108518, at *14 (N.D. Ill. July 13, 2017). These factors establish that Kering exercises such control over Gucci and/or limited discovery is necessary to make this determination.

As to the first factor, Gucci does not have an independent Board of Directors. https://www.kering.com/en/group/our-governance/board-of-directors/. Kering appoints Gucci's president and CEO. (Ex. A at ¶10). Kering also exercises significant control over Gucci. It appoints Gucci's creative director. (Ex. A at ¶11). Kering applies its policies to employees at Gucci-branded stores, mandates training on its Code of Ethics, and provides them with benefits and insurance. Gucci employees are directed to Kering with regard to personnel issues and when terminated. (Ex. A at ¶¶4-9). Moreover, Kering admits that Gucci is its agent – one of the "Houses" it possesses – on its website. https://www.kering.com/en/group/discover-kering/. Thus, the first, second and fifth factors in the "unusually high degree of control test" suggest jurisdiction may apply.

As to the final three factors, this information is in the exclusive control of Kering. Accordingly, to the extent this Court declines to exercise personal jurisdiction on the basis of Kering's direct contacts with Illinois, plaintiff respectfully requests limited discovery to determine whether and to what extent Kering arranges financing for and capitalization of Gucci, keeps separate books and records, and makes payments to Gucci. Courts permit such discovery upon a prima facie showing that jurisdiction may apply in order to make a ruling on a full and fair evidentiary record. *See, e.g., Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 778 (7th Cir. 2003) (ruling on a motion to dismiss for lack of jurisdiction only after limited discovery).

Kering's control over Gucci, based on these same facts, may also convey jurisdiction by virtue of piercing the corporate veil. However, this would apply only if Kering and Gucci failed to observe corporate formalities, *see Hangzhou Chic Intelligent Tech. Co. v. P'ship & Unincorporated Ass'n Identified on Schedule "A*, U.S. Dist. LEXIS 109380, at *7 (N.D. Ill. June 21, 2022). Such information is exclusively in the control of defendants. Limited discovery is thus necessary as to this issue as well.

For all these reasons, plaintiff respectfully requests this Court deny Kering's Rule 12(b)(2) motion based on Kering's contacts. In the alternative, plaintiff seeks limited discovery and the opportunity to brief the jurisdiction issue on a full record.

## Conclusion

For all the above reasons, plaintiff respectfully requests this Court deny defendants' motion to dismiss and to strike. In the alternative, plaintiff respectfully requests leave to file an amended complaint and take limited discovery as to jurisdictional issues.

Respectfully submitted,

TRACY COHEN

/s/ *Johanna J. Raimond*
One of the Attorneys for Plaintiff

Tamara N. Holder
The Law Firm of Tamara N. Holder LLC
917 West Washington Blvd., Suite 222
Chicago, Illinois 60607
312-440-9000
tamara@tamaraholder.com
ARDC: 6284888

Johanna J. Raimond
Law Offices of Johanna J. Raimond Ltd.
431 South Dearborn, Suite 1002
Chicago, Illinois 60605
312-235-6959
jraimond@raimondlaw.com
ARDC: 6230092

## Certificate of Service

On September 9, 2024, the undersigned, an attorney, certifies that the foregoing was served through the ECF system of the United States District Court for the Northern District of Illinois on all counsel of record.

/s/ *Johanna J. Raimond*