UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TRACY COHEN,<br>*on behalf of herself and all others similarly situated*<br>　　　　Plaintiff<br><br>　　v.<br><br>KERING AMERICAS, INC., and GUCCI AMERICA, INC.,<br>　　　　Defendants | No. 24 CV 7046<br><br>Judge Jeremy C. Daniel |

**ORDER**

The defendants' Motion to Dismiss [12] is granted as to Defendant Kering Americas, Inc., for lack of personal jurisdiction, and denied on all other grounds. The remaining defendant shall answer the complaint on or before November 12, 2024.

**STATEMENT**

This is a putative class action against Kering Americas, Inc., ("Kering") and Gucci America, Inc., ("Gucci") for alleged violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") and unjust enrichment. (R. 1 at 21–32 ("First Amended Complaint" or "FAC")).[1] The plaintiff, Tracy Cohen, alleges that, while employed as a sales associate at Gucci's Chicago store, she sold products made from "exotic" (snake and/or crocodile) skins while telling customers that the skins were ethically and humanely sourced. (*Id*. ¶¶ 10–11.) The plaintiff further alleges she made these statements in accordance with her training on how to sell exotic skin products to customers. (*Id*.) According to the plaintiff, both she and her customers purchased Gucci's exotic skin products believing her statements were accurate. (*Id*. ¶¶ 11, 18.)

In March 2024, the plaintiff claims to have learned from news reports that Gucci and Kering suppliers in Thailand allegedly engaged in the abusive slaughter and skinning of pythons and crocodiles. (*Id*. ¶¶ 19–23.) She alleges that the defendants

---

[1] This case was originally filed in the Circuit Court of Cook County, Illinois, and then removed here. (R. 1 at 1). The plaintiff has not challenged the removal, and the Court, after reviewing the notice of removal, concludes it is sufficient to establish removal was proper under 28 U.S.C. §§ 1332(d) and 1446(b).

deceived her, and others, into buying exotic skin products through false representations about the skin's ethical sources. (*Id.* ¶¶ 11, 18, 24–27.) She seeks to represent a class of people who purchased exotic skin products from Gucci in Illinois from January 2009 to present. (*Id.* ¶ 29.)

The defendants moved to dismiss the plaintiffs' claims against Kering for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), and to dismiss the claims against both defendants for failure to state a claim under Rule 12(b)(6), or alternatively, to strike the plaintiff's class allegations as facially deficient under Rule 23. (R. 12; R. 13.)

## Jurisdiction over Defendant Kering

A court may only exercise specific personal jurisdiction when the defendant purposefully directs its activities at the forum state or conducts business in that state, and the alleged injury arises out of or relates to the defendant's contacts with the forum. *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). When jurisdiction is contested, the court may hold an evidentiary hearing, or may rule based on written materials such as pleadings and affidavits. *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). When no hearing is held, the plaintiff need only make a *prima facie* case of personal jurisdiction, and is entitled to resolution of relevant factual disputes in her favor. *Id.*

The defendants argue that the plaintiff failed to plead any facts giving rise to personal jurisdiction over Kering. (R. 13 at 5.) In their view, the allegations in the complaint are all rooted in Gucci's conduct, and there is no allegation of conduct by Kering other than its role as Gucci's parent company. (*Id.*)

Here, the plaintiff asserts jurisdiction over Kering in her complaint with a lone statement that both defendants transact business in Illinois. (FAC ¶ 5.) Beyond that statement, the allegations in her complaint are based upon her employment at Gucci. (*Id.* ¶¶ 7–11.) In her response brief, she argues that Kering's "unusually high degree of control over Gucci" provides a basis for jurisdiction. (R. 18 at 11–12.) The plaintiff attaches an affidavit in which she affirms that she was jointly employed by Kering and Gucci, that Kering provided her benefits, served as her Human Resources point of contact, subjects Gucci employees to its code of conduct, appoints key Gucci executives, and that "Gucci sells products manufactured by Kering." (R. 18-1).

The plaintiff's pleadings and affidavits do not make out a *prima facie* case for personal jurisdiction over Kering. The plaintiff's boilerplate statement in her operative complaint that the company transacts business in Illinois, (FAC ¶ 5), is insufficient. *See Mohammed v. Uber Techs., Inc.*, 237 F. Supp. 3d 719, 735 (N.D. Ill. 2017) (the Court need not credit conclusory statements of jurisdiction).

Next, taking the statements in the plaintiff's affidavit (R. 18-1) as true, most of her allegations amount to no more than the provision of administrative services from Kering to Gucci. The provision of these services, such as payroll, human resources, or benefits administration, to a subsidiary are an inadequate basis for the exercise of personal jurisdiction over a parent corporation. *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 945 (7th Cir. 2000) ("[A] corporate parent may provide administrative services for its subsidiary in the ordinary course of business without calling into question the separateness of the two entities for purposes of personal jurisdiction . . . parents do not expect that performing these activities may subject them to liability because of the actions of the subsidiaries").

The remainder of plaintiff's arguments are unconvincing. She argues that Kering exercises an "unusually high degree of control" over Gucci, by appointing executives and promulgating a code of conduct, such that exercising jurisdiction over Kering is justified. (R. 18 at 11–13.) This would entail piercing the corporate veil. *See Cent. States*, 230 F.3d at 944 ("[W]here corporate formalities are substantially observed . . . the acts of one cannot be attributed to the other."). The Court is sitting in diversity and so applies the law of the state of incorporation of Kering. *Wachovia Sec., LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 751 (7th Cir. 2012). Kering is incorporated in Delaware. (R. 13 at 4 n.2.) In Delaware, a viable claim for piercing the corporate veil must plead "the corporation, through its alter-ego, has created a sham entity designed to defraud investors and creditors." *See Eagle Air Transp., Inc. v. Nat'l Aerotech Aviation Delaware, Inc.,* 75 F. Supp. 3d 883, 896 (N.D. Ill. 2014) (quoting *Crosse v. BCBSD, Inc.,* 836 A.2d 492, 496 (Del. 2003)*)*. Even accepting the facts alleged in her affidavit as true, the plaintiff fails to allege that the corporate structure of Kering and Gucci are fraudulent, and she accordingly fails to state a claim for piercing the corporate veil here.

Last, the plaintiff's allegation that "Gucci sells products manufactured by Kering." (R. 18-1), does not provide a basis for jurisdiction over Kering. Specific personal jurisdiction arises out of injury-related contacts with the forum. *Tamburo* 601 F.3d 702. Here, injury-related contacts should relate to the exotic skin bags sold by Gucci. A general statement that some unspecified products sold by Gucci were manufactured by Kering is insufficient to tie Kering's contacts with Illinois to the alleged injury in this case.

**<u>Failure to State a Claim against Defendant Gucci</u>**

Having dismissed Kering, what remains is whether the complaint supports an inference that Gucci violated the ICFA or is liable for unjust enrichment. A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint, not the merits of the allegations. *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). To overcome a motion to dismiss, a complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and raise the right to relief above a

speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Complaints alleging fraud or deceptive conduct must plead "with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This requires the "'who, what, when, where, and how' of the alleged fraud." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) (citations omitted). The Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *In re Abbott Labs. Derivative S'holder Litig.*, 325 F.3d 795, 803 (7th Cir. 2003).

Stating a claim under the ICFA requires pleading that "the defendant committed a deceptive or unfair act with the intent that others rely on the deception, that the act occurred in the course of trade or commerce, and that it caused actual damages." *Benson*, 944 F.3d at 646 (citation omitted).

The defendants argue the plaintiff's ICFA claim fails to identify, with specificity, the deceptive act, is impermissibly based on information and belief from third party sources, and fails to plead actual damages. (R. 13.) The Court disagrees. The plaintiff has sufficiently pled a claim for deceptive practices under the ICFA.

The Court first considers whether the complaint fails to identify an alleged deceptive act. The plaintiff states that when selling exotic skin products at Gucci's store, she exhibited them as she was trained to do and told customers that "the skins were sourced ethically," by shedding or as "a byproduct of the meat industry," from animals that "were not tortured." (FAC ¶ 10.) The plaintiff asserts these statements were false. These are sufficiently detailed allegations to state a claim under the IFCA and satisfy Rule 9(b). *See, e.g., Thomas v. Walmart Inc.*, No. 23 CV 5315, 2024 WL 1050179, at *8 (N.D. Ill. Mar. 11, 2024) (allegations that product's quality is less than advertised are sufficient to allege deceptive practices under the ICFA).

Next, the defendants argue that the plaintiff's allegations of fraud fail because they are rooted in third-party sources—defendants assert that fraud cannot be pled based on information and belief, but requires actual knowledge. (R. 13 at 11–12) (citing *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441–43 (7th Cir. 2011)). This argument overreads *Pirelli,* which openly cautions that "the general rule that fraud cannot be pled based on information and belief is not ironclad[.]" 631 F.3d at 441–43. Rather, "the practice is permissible, so long as (1) the facts constituting the fraud are not accessible to the plaintiff and (2) the plaintiff provides 'the grounds for [her] suspicions.'" *Id.* (quoting *Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 924 (7th Cir. 1992)). Here, the facts constituting the alleged fraud are predominately accessible at Thai crocodile and python farms which are plausibly inaccessible to the plaintiff in Illinois. And there are adequate grounds for the plaintiff's suspicions at this stage in the proceedings. Her operative complaint contains pictures and news reports detailing the defendants' alleged treatment of animals. (FAC ¶¶ 20–24.) The veracity, authenticity, and representativeness of these

4

photographs and reports are questions for summary judgement or trial, not a motion to dismiss. *McReynolds*, 694 F.3d at 878.

The Court also finds that the plaintiff has adequately pled actual damages. The allegations in this case are not mere assertions that the plaintiff would not have purchased a product if it had been properly advertised. *See Benson*, 944 F.3d 647–48 (such claims are inadequate under the ICFA). Read in the light most favorable to her, the plaintiff has pled that the exotic skin products she and others purchased are defective because they are made with unethically obtained leather, contrary to Gucci's claim it uses ethically sourced leather. (R. 18 at 2). These allegations are sufficient at this stage. *Benson,* 944 F.3d at 647 (ICFA claims require pleading the product was defective or worth less than what the plaintiff paid).

Last, the Defendants argue that the plaintiff's unjust enrichment claim rises and falls with her ICFA claim and do not raise any independent arguments in support of dismissal. (*See* R. 13 at 13–14.) Because the Court concludes that ICFA allegations survive, the plaintiff's unjust enrichment claim survives.

## **Class Allegations**

The defendants ask the Court, in alternative, to strike the plaintiff's class allegations. (R. 13 at 14.) They argue that the class allegations are so "facially and inherently deficient" that striking them is appropriate. (R. 13 at 14.) However, the defendants' arguments focus on the difficulty the plaintiff will have establishing the commonality and typicality requirement of Rule 23(a). (*Id.*) These are factual questions, which render the defendant's motion premature. *See Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 295 (N.D. Ill. 2014) ("a motion to strike the class allegations at the pleading stage is premature" when the dispute over certification is factual). The Court declines the invitation to pre-judge the class in advance of a properly briefed motion to certify.

For the foregoing reasons, the defendants' motion to dismiss for lack of personal jurisdiction over Kering is granted. The motion is denied in all other respects.

Date: October 21, 2024

JEREMY C. DANIEL
United States District Judge